## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Tiffaney L. Mayes, Wanda J. Duckson, Roshawnda Simpson, Angela Y. Bouknight, Bernetta Lewis, Doretha Montgomery, Annette Walker, Emma Seibles, Lorna Gladden, Frenchie Hannah, Mary McClellan, Torey McClellan, Heather Davis, Dianne C. Williams, Taneshia Lewis, Tonia Armoni, <br><br> Plaintiffs, <br><br> v. <br><br> Excelsior Ambulance Service, Inc., James A. Graham, *M.D.*, <br><br> Defendants. | Civil Action No.: 3:17-cv-02358-JMC <br><br> **ORDER AND OPINION** |

This matter is before the court for review of Defendants Excelsior Ambulance Service, Inc. and James A. Graham's (collectively, "Defendants") Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment (ECF No. 28) filed on May 3, 2018. For the reasons set forth herein, the court **DISMISSES AS MOOT** Plaintiffs Tiffaney L. Mayes, Wanda J. Duckson, Roshawnda Simpson, Angela Y. Bouknight, Bernetta Lewis, Doretha Montgomery, Annette Walker, Emma Seibles, Lorna Gladden, Frenchie Hannah, Mary McClellan, Torey McClellan, Heather Davis, Dianne C. Williams, Taneshia Lewis, and Tonia Armoni's (collectively, "Plaintiffs") Complaint (ECF No. 1-1 at 3). Accordingly, the court **DENIES AS MOOT** Defendants' Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment (ECF No. 28) and **DENIES AS MOOT** Defendants' Motion in Limine (ECF No. 54).

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs provided "personal services" to Defendants, which included transporting veterans to "various locations." (ECF No. 1-2 at 2.) Defendants' business "operated [as] an ambulance service pursuant to a contract with the Veterans Administration." (ECF No. 1-1 at 5 ¶ 1.) As it relates to the provision of ambulance services, the contract between Defendants and the Veterans Administration fell under the McNamara-O'Hara Service Contract Act of 1965 ("the SCA"), 41 U.S.C. §§ 6702–6707 . (ECF No. 28-1 at 43–44.) Upon learning that Defendants were possibly underpaying them, Plaintiffs notified the Wage and Hour Division of the United States Department of Labor ("the Wage and Hour Division") by filing a complaint. (ECF Nos. 33-1, 33-2, 33-3, 33-4, 33-5.) According to Defendants, the Wage and Hour Division concluded that Plaintiffs were improperly classified and sought retroactive pay for Plaintiffs. (ECF No. 1-2 at 2.) On February 13, 2017, the Wage and Hour Division determined that Defendants needed to pay a total of $352,807.40 in unpaid wages to Plaintiffs. (ECF No. 28-2.)

On July 26, 2017, Plaintiffs filed their Complaint in the Richland County Court of Common Pleas, in Columbia, South Carolina. (ECF No. 1-1.) Plaintiffs allege that Defendants "withheld a portion of [their] wages" and "a claim for back wages accrued." (ECF No. 1-1 at 5 ¶ 3.) Plaintiffs' causes of action arise under South Carolina law and include: (1) breach of contract and (2) violations of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41–10–10 to 41–10–110. (ECF No. 1-1 at 5–6 ¶¶ 6–10.) On September 1, 2017, Defendants removed this matter to the United States District Court for the District of South Carolina. (ECF Nos. 1, 1-3, 1-4.) Plaintiffs submit that Defendants "agreed that they owed [] [P]laintiffs for back pay and agreed to pay them back pay by a certain date or dates but failed to do so." (ECF No. 33 at 3.) Defendants contend that they did not agree to pay wages to Plaintiffs, as mandated by the Wage and Hour

Division, but that they decided "not to contest the wages that the Wage and Hour Division determined" was due to Plaintiffs. (ECF No. 28 at 5.) At the same time, however, Defendants state that they "committed themselves to pay the Plaintiffs these wages." (*Id.*)

On May 3, 2018, Defendants filed their Motion for Judgment on the Pleadings, or, Alternatively, Summary Judgment. (ECF No. 28.) Defendants essentially argue that neither of Plaintiffs' causes of action are viable because the Wage and Hour Division is the only entity that may provide Plaintiffs with relief. (*Id.* at 7.) First, as to Plaintiffs' breach of contract claim, Defendants contend that Plaintiffs may not seek recovery under the SCA because they are merely third-party beneficiaries and do not possess a private right of action. (*Id.* at 7–8.) Defendants claim that the Wage and Hour Division may only enforce wage disputes concerning contracts under the SCA. (*Id.* at 8.) Secondly, as to Plaintiffs' second cause of action under the SCPWA, Defendants forcefully argue that Plaintiffs do not have employment agreements with Defendants, thereby depriving them of a cause of action under the SCPWA. (*Id.* at 12–13.) Moreover, Defendants reason that Plaintiffs' SCPWA claim is predicated upon the SCA and not state law. (*Id.* at 11.) Lastly, Defendants contend that the court lacks subject-matter jurisdiction over this matter because the Wage and Hour Division possesses the sole jurisdiction to enforce the SCA. (*Id.* at 14–15.)

On May 31, 2018, Plaintiffs responded in opposition to Defendant's Motion. (ECF No. 33.) Plaintiffs claim that they "do not seek to recover on an alleged private cause of action under the [SCA]." (*Id.* at 3.) Plaintiffs argue that had Defendants "simply done what they had agreed to do" then "the matter would have been resolved." (*Id.*) Citing to their own affidavits, Plaintiffs suggest that Defendants "obligated or pledged themselves to pay" proper wages. (*Id.* at 4.) Lastly, Plaintiffs assert that the court should consider remanding the case to state court because there is no diversity jurisdiction over the action. (*Id.* at 5.)

3

On October 15, 2018, Defendants filed their Motion in Limine. (ECF No. 54.) Defendants request the court to preclude Plaintiffs from introducing numerous pieces of evidence at trial. (*Id.* at 9.) Plaintiffs responded in opposition to Defendants' Motion in Limine on October 29, 2018. (ECF No. 55.) In their response, Plaintiffs concede their breach of contract claim against Defendants and state that the only remaining claim is their second cause of action—violations of the SCPWA. (*Id.* at 1, 6.) Plaintiffs advised the court that they relinquish their breach of contract claim because "[s]ince this action was commenced, the [United States] Department of Labor has seized and has paid the amount due each plaintiff from the defendants for unpaid wages and has paid the plaintiffs their actual damages." (ECF No. 55 at 1.)

On January 31, 2019, the court heard oral arguments from the parties. (ECF No. 61.) Defendants stated that Plaintiffs affirmatively conceded their breach of contract claim and are foreclosed from seeking further relief under the SCPWA because the United States Secretary of Labor ("the Secretary") has "exclusive jurisdiction" to enforce matters arising under the SCA. In other words, Defendants maintained that the SCA bars other private rights of action, including those arising under the laws of South Carolina. Defendants also acknowledged that, through the Wage and Hour's administrative proceedings, Plaintiffs have been "paid in full" under the SCA and "paid what was owed," meaning that "there is no longer any controversy." Plaintiffs agreed that the Wage and Hour Division "seized the money" and paid them what was owed, thereby satisfying their breach of contract claim. However, Plaintiffs asserted that their SCPWA claim remains pending, and they have not sued under the SCA or any other federal statute. Plaintiffs further submitted that there is a genuine factual dispute that should proceed to trial. Because this matter has been extensively briefed and argued, it is now ripe for the court's review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully

briefed the issues, and this matter is ripe for consideration.").

## II. LEGAL STANDARD

Subject-matter jurisdiction "involves a court's power to hear a case" and may never be "forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). A federal court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). When a court lacks subject-matter jurisdiction, it must dismiss the case. *See Frank v. Commonwealth of Ant. & Barb.*, 842 F.3d 362, 367 (5th Cir. 2016); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007 (6th Cir. 2009); *Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *Tarta v. Nation Care, Inc.*, 864 F. Supp. 2d 173, 177 (D.D.C. 2012); *Arcadia Valley Hosp. v. Bowen*, 641 F. Supp. 190, 192 (E.D. Mo. 1986).

It is well established that "[t]he inability of the federal judiciary to review moot cases derives from the requirement of Art[icle] III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008). In other words, "[t]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction . . . ." *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). "When a case or controversy ceases to exist, the litigation is moot, and the court's subject-matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015) (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (per curiam)). "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (quoting *Simmons v. United Mort. & Loan Inv.*,

*LLC*, 634 F.3d 754, 763 (4th Cir. 2011)). It is well established that "subsequent events can moot" a valid claim. *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013). Therefore, a case may become moot "due to a change in the facts or a change in the law." *S.C. Coastal Conservation League*, 789 F.3d at 482 (citing *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983)). The United States Court of Appeals for the Fourth Circuit has specifically held that "a claim is moot when the claimant receives the relief he or she sought to obtain through the claim." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002).

### III. DISCUSSION

The SCA applies to "any contract" that is "made by the Federal Government," "involves an amount exceeding $2,500," and "has as its principal purpose the furnishing of services in the United States through the use of service employees." 41 U.S.C. § 6702(a)(1)–(3). The SCA specifically provides that "[t]he Secretary shall administer [the SCA]."[1] 41 U.S.C. §§ 6506(a), 6707(a). As it relates to the SCA's enforcement, only "*[t]he Secretary, or an authorized representative of the Secretary,* may make investigations and findings as provided in this chapter *and may, in any part of the United States, prosecute an inquiry necessary to carry out* [the SCA]." 41 U.S.C. §§ 6506(e), 6507(a) (emphasis added). Further, only "[t]he Secretary or an impartial representative designated by the Secretary may make decisions, based on findings of fact, that are necessary to enforce [the SCA]." 41 U.S.C. § 6507(f). Noticeably, the SCA's statutory scheme does not provide a private right of action to employees seeking to enforce its provisions.[2] *See* 41

---

[1] "The term 'Secretary' means the Secretary of Labor." 41 U.S.C. §§ 6501(3), 6701(2).
[2] A private right of action permits authorized individuals, claiming a specific injury, to bring legal actions against alleged violators of regulatory statutes. *See generally* William H. Timbers & David A. Wirth, *Private Rights of Action and Judicial Review in Federal Environmental Law*, 70 CORNELL L. REV. 403, 404–07 (1985). While a legislature may expressly create a private right of action for injured individuals subject to a regulatory statute, there are instances in which a regulatory statute may "implicitly" provide a private right of action. Bradford C. Mank, *Is There*

U.S.C. §§ 6701–6707.

When employees fall within the scope of the SCA or the related Davis-Bacon Act, federal courts have routinely held that state law claims may not serve as additional vehicles to vindicate injured employees' rights. *See Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226–27 (D.C. Cir. 1991) (holding that the statutory scheme of the SCA "leaves no room" for a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a claim "couched under" RICO is preempted); *Johnson v. Sys. Connection of Md., Inc.*, C/A No. JKB-16-630, 2016 WL 4124214, at *3 (D. Md. Aug. 2, 2016) (holding that state claims were "inappropriate vehicles" for obtaining back wages under the related Davis-Bacon Act because the claims were cloaked "in the garb of state law"); *Ralton v. Collecto, Inc.*, C/A No. 14–13184–DJC, 2015 WL 854976, at *4 (D. Mass. Feb. 27, 2015) (holding that a plaintiff lacked standing as a third-party beneficiary to an employer's contract with the federal government and could not bring a breach of contract claim to pursue wages under the SCA); *Miccoli v. Ray Commc'ns, Inc.*, C/A No. 99-3825, 2000 WL 1006937, at *4 (E.D. Pa. July 20, 2000) (holding that a plaintiff did not have a substantive right to compensation under the SCA and could not pursue a related state law claim, under the Pennsylvania Wage Payment and Collection Law, because there was no substantive right to enforce); *Oji v. PSC Envtl. Mgmt. Inc.*, 771 F. Supp. 232, 233–34 (N.D. Ill. 1991) (dismissing a plaintiff's breach of contract claim under state law because only the Secretary of Labor has authority to enforce the provisions of the SCA). Put differently, a plaintiff is

---

*a Private Cause of Action Under EPA's Title VI Regulations?: The Need to Empower Environmental Justice Plaintiffs*, 24 COLUM. J. ENVTL. L. 1, 26–27 (1999). The court discerns no need to address or consider this distinction for purposes of the SCA because it is not presented by either party in this dispute. *See generally United States v. Oliver*, 878 F.3d 120, 126 (4th Cir. 2017) ("In our adversarial system, 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008))).

foreclosed from pursuing common law or statutory claims grounded in state law because the claim is "in reality a private claim for back wages under the . . . [SCA]." *Miccoli*, 2000 WL 1006937, at *3. This is so because the SCA provides an exclusive administrative scheme for its enforcement through the Secretary. *See Danielson*, 941 F.2d at 1227. Only the Secretary is permitted to make decisions and enforce the SCA. *See* 41 U.S.C. §§ 6506(e), 6507(a)–(f). Additionally, some federal courts have specifically held that the SCA does not provide an express or implied private right of action. *See Danielsen*, 941 F.2d at 1227–28 ("[I]t is plain that the SCA creates no private remedy."); *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427* v. *Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 779 (9th Cir. 1981) (noting that the SCA "does not specifically grant a private right of action, and nothing in its language or history compels us to believe that such a right may be implied").

Underlying this important line of decisions is the critical, if not dispositive, assumption that Congress' remedial scheme under the SCA preempts state laws providing claimants with additional relief alongside the SCA. *See generally Farina v. Nokia Inc.*, 625 F.3d 97, 117–22 (3d Cir. 2010) (discussing express, field, and conflict preemption under precedent from the United States Supreme Court); *Lontz v. Tharp*, 413 F.3d 435, 440–41 (4th Cir. 2005) (differentiating between complete, conflict, and ordinary preemption); *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370–71 (4th Cir. 2003) (explaining both complete and ordinary preemption); Alan Untereiner, *The Defense of Preemption: A View from the Trenches*, 84 TUL. L. REV. 1257, 1259–60 (2010) (discussing the different preemption doctrines delineated by the Supreme Court). Federal courts addressing the SCA have not discussed this preemption issue directly, however, this court finds the issue to merit consideration. *See Ralton v. Collecto, Inc.*, C/A No. 14–13184–DJC, 2015 WL 854976, at *4 (D. Mass. Feb. 27, 2015); *Miccoli v. Ray*

8

*Commc'ns, Inc.*, C/A No. 99-3825, 2000 WL 1006937, at *4 (E.D. Pa. July 20, 2000); *Oji v. PSC Envtl. Mgmt. Inc.*, 771 F. Supp. 232, 233–34 (N.D. Ill. 1991). Generally, "[c]omplete preemption is a 'jurisdictional doctrine,' while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim." *Lontz*, 413 F.3d at 440 (citing *Sonoco Prods. Co.*, 338 F.3d at 370–71). "Under ordinary conflict preemption, state laws that conflict with federal laws are preempted and preemption is asserted as 'a federal defense to the plaintiff's suit.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186-87 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Under the complete preemption doctrine, "there is 'no such thing' as the state action [because] the federal claim is treated as if it appears on the face of the complaint [and] it effectively displaces the state cause of action." *Lontz*, 413 F.3d at 441 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003)). "Complete preemption thus 'transform[s] the plaintiff's state-law claims into federal claims.'" *See id.* (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)). This is so because "Congress has occupied the field so thoroughly as to leave no room for state-law cause of action at all." *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 702 (4th Cir. 2015) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987)). Complete preemption only applies in a very narrow set of cases. *See id.* at 700 (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998)). Although there is a rebuttable presumption against a finding of complete preemption, the presumption is overcome if "the congressional intent that state law be entirely displaced [is] clear in the text of the statute." *Lontz*, 413 F.3d 441 (citing *Metro. Life Ins. Co.*, 481 U.S. at 65–66).

The text of the SCA specifically states that "[t]he Secretary shall administer [the SCA]." 41 U.S.C. §§ 6506(a), 6707(a). The SCA only permits "*[t]he Secretary, or an authorized representative of the Secretary,* may make investigations and findings as provided in this chapter

9

*and may, in any part of the United States, prosecute an inquiry necessary to carry out* [the SCA]." 41 U.S.C. §§ 6506(e), 6507(a) (emphasis added). Further, only "[t]he Secretary or an impartial representative designated by the Secretary may make decisions, based on findings of fact, that are necessary *to enforce* [the SCA]." 41 U.S.C. § 6507(f) (emphasis added). As it relates to employees falling within the purview of the SCA, the Secretary is the *only* individual with authority to enforce an employee's wages under the statute. *See* 41 U.S.C. §§ 6506(e), 6507(a). The text of the SCA is far less expansive than what the United States Supreme Court found sufficient to compel complete preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See Metro. Life Ins. Co.*, 481 U.S. at 65–66. In *Metropolitan Life*, the Court held that the civil enforcement scheme of ERISA, which permitted a participant, beneficiary, or fiduciary to enforce the statute's requirements, completely preempted state law claims. *See id.* Increasingly narrower than ERISA's civil enforcement provision, the SCA only allows the Secretary, not an employee, to enforce the payment of wages. *See* 41 U.S.C. §§ 6506(e), 6507(a).

In the instant case, not only does the SCA only authorize the Secretary to enforce an employees' wages and deny Plaintiffs a private right of action, it further states that "[i]f *accrued payments withheld . . . are insufficient to reimburse a service employee . . .* the Federal Government may bring action against the contractor . . . to recover the remaining amount of underpayment." 41 U.S.C. § 6705(b) (emphasis added). *See also* 29 C.F.R. § 4.187(b) ("Section 5(b) of the Act provides that if the accrued payments withheld under the terms of the contract are insufficient to reimburse all service employees with respect to whom there has been a failure to pay the compensation required pursuant to the Act, *the United States may bring action against the contractor, subcontractor, or any sureties in any court of competent jurisdiction to recover the remaining amount of underpayments*." (emphasis added)). Plaintiffs' claim under the SCPWA

curtails the explicit enforcement authority granted to the Secretary by Congress and the overall administrative scheme set forth within the SCA. *See Darcangelo*, 292 F.3d at 194–95 (holding that a claimant, who was barred by complete preemption, could not bring a breach of contract claim under ERISA because it was an "alternative enforcement mechanism" to the statute). In *Danielsen*, the United States Court of Appeals for the District of Columbia emphatically rejected a claim under RICO, which would have provided claimants with treble damages, because it "undercut the specific remedy prescribed by Congress" for employees governed by the SCA, which was to provide relief through a comprehensive administrative scheme. 941 F.2d at 1227–28. Here, Plaintiffs' claim for treble damages under the SCPWA, or damages at an amount "equal to three times" their unpaid wages (ECF No. 1-1 at 6), are plainly "within the scope" of the SCA because their actual wage amounts, which would be the basis of any treble damages, were explicitly governed by the SCA. *See Metro. Life Ins. Co.*, 481 U.S. at 66 (holding that state law causes of action were "within the scope" of ERISA's civil enforcement provisions and completely preempted). The *Danielsen* court rejected such a rigid distinction between the SCA and a federal statute supplying treble damages. 941 F.2d at 1227–28. Because Plaintiffs have no statutory right to enforce provisions of the SCA and only the Secretary possesses broad enforcement authority under the statute, Plaintiffs are completely preempted from bringing their state law claim under the SCPWA, and their SCPWA claim is nothing more than a claim brought under the SCA. *See Johnson*, 781 F.3d at 702.

Plaintiffs have expressly conceded their breach of contract claim, which would only leave Plaintiffs' claim under the SCPWA for the court's consideration. (ECF No. 55 at 1, 6.) The SCA governed the contract between Defendants and the Veterans Administration and also proscribed the specific wages that were due to Plaintiffs. (*See* ECF No. 28-1 at 43–44.) Plaintiffs' employment

by Defendants was entirely dependent upon Defendants' contractual relationship with the Veterans Administration, thereby making them third-party beneficiaries to the contract. *See Ralton*, 2015 WL 854976, at *4. When initially filing the instant action, Plaintiffs were not paid the entirety of their wages under the SCA, and the Wage and Hour Division actively sought to compel and enforce the payment of their unpaid wages. (ECF No. 28-2.) During the hearing, Plaintiffs and Defendants readily agreed that Plaintiffs were recently paid their wages under the SCA and as mandated by the Wage and Hour Division. Indeed, Plaintiffs advise the court that "[s]ince this action was commenced, the [United States] Department of Labor has seized and has paid the amount due each plaintiff from the defendants for unpaid wages and has paid the plaintiffs their actual damages." (ECF No. 55 at 1.) Since they are now paid pursuant to the Wage and Hour Division's enforcement proceedings and Defendants have directly provided them with the appropriate compensation, Plaintiffs have "receive[d] the relief [they] sought to obtain through [their] claim[s]." *Friedman's, Inc.*, 290 F.3d at 197.

Even though they bring a claim under the SCPWA for additional damages, Plaintiffs' wages are exclusively governed by the SCA (ECF No. 28-1 at 43–44) and limited to enforcement by the Wage and Hour Division, which precludes any express or implied private action. *See Danielsen*, 941 F.2d at 1227–28. *See also* 41 U.S.C. §§ 6701–6707. Moreover, based upon ample federal case law and the doctrine of complete preemption, Plaintiffs are completely foreclosed from seeking additional compensation under the cloak of state law. *See Ralton*, 2015 WL 854976, at *4; *Miccoli*, 2000 WL 1006937, at *3; *Oji*, 771 F. Supp. at 233–34. In other words, the SCA, even though not explicitly invoked by Plaintiffs, is their sole legal remedy and means for relief. *See Danielsen*, 941 F.2d at 1227–28; *Ralton*, 2015 WL 854976, at *4; *Miccoli*, 2000 WL 1006937, at *3; *Oji*, 771 F. Supp. at 233–34. Given that state law claims are completely preempted for

employees governed by the SCA and a crucial change in facts indicates that Plaintiffs were provided with their unpaid wages from administrative proceedings, Plaintiffs' SCPWA claim is rendered moot, thereby depriving the court of subject-matter jurisdiction. *See S.C. Coastal Conservation League*, 789 F.3d at 482; *Pashby*, 709 F.3d at 316; *Friedman's, Inc.*, 290 F.3d at 197. There is no longer a live case or controversy for the court to adjudicate, and, therefore, the court is compelled to dismiss the case for lack of subject-matter jurisdiction under Article III of the United States Constitution. *Deal*, 911 F.3d at 191; *Frank*, 842 F.3d at 367; *Hardy*, 545 F.3d 280 at 283. *See generally Brown v. Buhman*, 822 F.3d 1151, 1155 (10th Cir. 2016) ("Mootness deprives federal courts of jurisdiction." (citations omitted)).

## IV. CONCLUSION

After a careful consideration of Defendants' Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment (ECF No. 28), Defendants' Motion in Limine (ECF No. 54), Plaintiffs' Responses in Opposition (ECF Nos. 33, 55), and the parties' arguments at the hearing, the court **DISMISSES AS MOOT** Plaintiff's Complaint (ECF No. 1-1 at 3). Accordingly, the court **DENIES AS MOOT** Defendants' Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment (ECF No. 28) and **DENIES AS MOOT** Defendants' Motion in Limine (ECF No. 54).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 19, 2019
Columbia, South Carolina